

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

NO. 3042

OPINION CONSTRUING SECTION 4, OF ARTICLE

2922L, REVISED CIVIL STATUTES, AND

HOLDING SAID STATUTE UNCONSTITUTIONAL

OFFICE OF THE ATTORNEY GENERAL

March 1, 1939

Honorable W. K. McClain
Criminal District Attorney
Williamson County
Georgetown, Texas

Dear Mr. McClain:

Opinion No. 0-306
Re:  Interpretation of Article
2922L, Sec. 4 and Article
5, Sec. 7, State Constitu-
tion and holding part of
statute unconstitutional.

This will acknowledge receipt of your letter of Feb-
ruary 7, 1939, wherein you propound the following question:

"Can the State Superintendent legally hold
up the State Per Capita Apportionment of a com-
mon school district having a twenty-five cent
tax because it does not pay the high school tui-
tion for pupils that are above the grades taught
in said common school district?  Said district
not having the funds to keep its own school run-
ning for eight months, with no excessive expend-
itures of any nature?"

This question arises from the authority given the State Superintendent in Section 4, Article 2922L Revised Civil Statutes which reads as follows:

"The State Superintendent shall withhold any and all funds due any district that refuses or fails to execute forms required by the State Department of Education for pupils eligible to have their high school tuition paid by the home district and the State. It is further provided that the State per capita available fund for each pupil transferred for high school purposes under this Act, who has enrolled in the school to which he has been transferred, shall be distributed to the districts to which such pupils have been transferred as the apportionment is paid by the State. If any district fails to pay this portion of the State per capita according to the provisions of this Act, then the State Superintendent, when notified by the superintendent of the receiving districts, accompanied by an affidavit of such failure shall withhold from such district, when the next per capita payment is ready for distribution, such an amount as such district may owe any other district until such obligation has been paid; provided further, that the State Superintendent shall investigate such accounts and determine that they are just accounts and obligations of the district before their portion of the per capita allotment is withheld."

Two terms should be defined to clarify the meaning of this statute. The term "state per capita apportionment" means the amount of money due each district for its individual scholastics from the available school fund; Article 2663, 2665 Revised Civil Statutes. For example the apportionment as figured for 1939 is approximately $22.00 per individual scholastic.

The term "tuition", as used in this statute means the amount of money necessary to pay the additional expense incurred by the transferring student to the receiving district. The rate of tuition charged said pupil shall be the actual cost of the teaching service based upon the average monthly enrollment, in the high school attended, exclusive of all other current or fixed charges not to exceed $7.50 per month per scholastic; Article 2678A.

The cardinal point to be decided is whether the above

statute conflicts with that portion of Section 5, Article 7 of the Constitution of Texas, which reads as follows:

". . . and the available school fund here-in provided shall be distributed to the several counties according to their scholastic population and applied in such manner as may be provided by law."

The term "scholastic population", as used above, means all pupils between the ages of 6 and 18 enrolled in public schools when the census is taken in the month of March, plus or minus any transfers in or out of any given district; Article 2816, 2696 Revised Civil Statutes. Thus, the per capita apportionment follows those students transferring, and under Section 4, Article 2922L of the Revised Civil Statutes, the State Superintendent is given the authority to withhold the per capita apportionment for those pupils remaining, until the tuition for the pupils transferred is paid by the sending district.

It should here be noted that the Constitution uses the words "shall be distributed". Chief Justice Gaines in the case of Jernigan v. Finley, 90 Tex. 205, in reference to Sec. 5, Art. 7 of the Constitution, says:

"To authorize the Comptroller to withhold his warrants until the county debt was paid would infringe the express provisions of the section quoted which declares that the fund shall be distributed to the several counties according to their scholastic population and applied in such manner as may be provided by law. It is evidently meant that it must be distributed and applied for the purpose for which the fund was created."

Vol. 37 Tex. Jur. p. 858, states in part:

". . . the Constitution declares that the available school fund shall be distributed to the several counties according to their scholastic population and the statute specifies the apportionment which shall be made........and it becomes the duty of the Comptroller to draw his warrants for the sum apportioned. Performance of this duty in case of refusal may be compelled by mandamus."

Article 2823, entitled "What shall constitute school funds", sets our more definitely the terms of Art. 7 of the

Constitution, and closes with the following statement:

". . . shall constitute the available school
fund, which fund shall be apportioned annually
to the several counties of this State according
to the scholastic population of each for the
support and maintenance of the public free schools."

The constitution, the statutes and the court deci-
sions are clear in stating that the available school funds
shall be distributed to the counties according to their
scholastic population.

The case of the Austin Independent School District,
et al v. Marrs Superintendent, et al, 41 S.W. (2d) 9, raises
a point that must be discussed in regard to this opinion.
In this case the Legislature passed a statute that the County
Superintendent's salary should be paid out of the school funds
of the common and independent school districts of the county.
When the Austin Independent School District refused to pay
its part of the salary, State Superintendent Marrs issued
an order withholding the Austin District's portion of the
county available school funds for the year 1930. The Austin
District sought to have a writ of mandamus issued commanding
Marrs to countermand his instruction and permit the Austin
District to have its available funds. The court granted the
mandamus, but stated that the Austin District should pay its
portion of the County Superintendent's salary. By way of
dictum, Judge Harvey in the above case, stated:

"Nothing has been found in the Constitution
which restrains the Legislature from authorizing
the appropriation of available funds belonging
to any school district to the payment for the
benefits received by the public schools of such
district."

In construing this statement of the court, we make
the following observations:

1. The court in granting the mandamus holds that
the available school funds must follow their prescribed
course.

2. The statute involving the County Superintendent's
salary was in effect an appropriation, whereas Article 2922L
is not an appropriation but gives the Superintendent of Schools
the extra legal power of withholding funds.

3.  As the court very clearly pointed out, each district receives specific benefits from the work of the county Superintendent, whereas, under Article 2922L the Constitutional rights of the scholastics remaining in the sending district are denied and penalized for the benefit of the few transferring scholastics.

The language of the constitution was carefully selected and the Supreme Court stated very forcibly that the available school funds shall be distributed to the several counties according to their scholastic population. To give the State Superintendent of Schools the extra legal power to impound the funds and to block the course prescribed by our constitution for those funds is clearly contrary to the spirit and the language of the constitution.

It is, therefore, the opinion of this Department that your question must be answered in the negative, as Section 4, Article 2922L of the Revised Civil Statutes conflicts with Section 5 of Article 7 of the Constitution of the State of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Glenn R. Lewis
Assistant

FBI:RS:wc

This opinion has been considered in conference, approved, and ordered recorded.

s/Gerald C. Mann
Gerald C. Mann
ATTORNEY GENERAL OF TEXAS